**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DERRICK ALLEN,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          1:19cv689
                                        )
TED WIRE,[1] et al.,                    )
                                        )
                    Defendants.         )

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion for Summary Judgment" (Docket Entry 62)[2] (the "Motion") filed by Will Austin, Casey Humphries, Erik McConchie, Dave Sigmund, and "Ted Wire" (collectively, the "Defendants"). For the reasons that follow, the Court should grant the Motion.

### BACKGROUND

Alleging violations of his rights during his employment at "Lynnwood, Brewing and Concern" (at times, "Lynnwood" or "Lynnwood Grill")[3] (Docket Entry 2 (the "Complaint") at 3), Plaintiff sued

_____

1  "Ted Wire is a misnomer for Edwin Dwyer." (Docket Entry 62 at 1 n.1 (internal quotation marks omitted).)  [Docket Entry page citations utilize the CM/ECF footer's pagination.]

2  For legibility reasons, this Opinion uses standardized spelling, punctuation, and capitalization in all quotations from the parties' materials.

3  Defendants identified the company's actual name as "Lynnwood Grill Inc." (Docket Entry 62-1, ¶ 2; see, e.g., Docket Entry 63 at 2 ("Plaintiff was employed as a dishwasher by Lynnwood

Defendants pursuant to "Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17" (at times, "Title VII"); the "Age Discrimination in Employment Act of 1967" (at times, the "ADEA"); the "Constitution of the United States, Fourteenth Amendment; 42 U.S.C. [§] 2000e-2(a); [and] 42 U.S.C. [§] 1981a and/or 42 U.S.C. [§] 1981b(a)" (Docket Entry 2 at 3). (See generally Docket Entry 2.)  With the exception of Casey Humphries, whom the Complaint references solely in the case caption (see id.), the Complaint identifies Defendants as the Owner, General Manager, and/or Kitchen Managers at Lynnwood (see id. at 2-3).  The Complaint specifies termination of employment, unequal terms and conditions of employment, and retaliation as the types of "discriminatory conduct" involved in Plaintiff's lawsuit.  (Id. at 4.)  The Complaint further asserts that Defendants discriminated against Plaintiff because of his "African-American" race, his "Black" color, his "Male" gender/sex, and his age.  (Id. at 4-5.)  According to the Complaint, this conduct occurred "[b]etween the dates of 05/28/2019 and 06/26/2019; 06/23/2019 (schedule altered)."  (Id. at 4.)

Per the Complaint:

> Caucasian Managers at [Lynnwood] are biased against African-American employe[e]s such as [Plaintiff]. Because [Plaintiff is] an African-American male, [he] was required to do extra work outside [his] job — [his] job

---

Grill Inc. ('Lynnwood Grill') from or about May 20, 2019 through or about June 24, 2019.")).

2

and other employees' jobs — which Caucasian workers were not required to do. [Plaintiff's] work schedule was changed on short notice contrary to the schedule previously posted. When [Plaintiff] complained about differential treatment, the Caucasian managers belittled [him] and treated [him] like [he] was incapable of understanding them, ultimately firing [him]. They discriminated against an African-American male who stands up for himself. The only African-Americans treated better than [Plaintiff] were the ones who acted gay.

(Id. at 5; accord id. at 4.)

The Complaint also includes an EEOC "Charge of Discrimination" dated July 9, 2019. (See id. at 8-9 (the "EEOC Form").) Although Plaintiff did not verify the allegations of the Complaint (see id. at 6), he submitted the EEOC Form "under penalty of perjury" (id. at 8). According to the EEOC Form,

[Plaintiff] was hired as a dishwasher in early May 2019. During [Plaintiff's] employment, [he] was subjected to disparate terms and conditions of employment in that White kitchen managers required [him] to complete duties that were not assigned to White dishwashers. Specifically, [Plaintiff] was required to complete tasks that the 10pm ending shift failed to complete. [Plaintiff] was also required to transport dishes to the rack and cook line.

On or about June 26, 2019, [Plaintiff] was discharged by Eric LNU (White) after a verbal disagreement with Will Austin (White), Kitchen Manager.

[Plaintiff] believe[s] that [he] ha[s] been discriminated against because of [his] race (Black) and age (40), in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act (ADEA).

(Id.)

Defendants moved to dismiss the Complaint. (See Docket Entry 13.) Construing the Complaint as raising claims under 42 U.S.C.

3

§ 1981 (see Docket Entry 32 (the "Recommendation") at 1-2, 15-17),[4] the Court dismissed Plaintiff's "Title VII, ADEA, and Fourteenth Amendment claims," but authorized "the Section 1981 claims [to] proceed" (Docket Entry 35 at 1 (adopting Recommendation)). The parties then engaged in discovery (see, e.g., Text Order dated July 14, 2021 (establishing discovery deadline of March 14, 2022)), during which Plaintiff filed his responses to Defendants' discovery requests (see Docket Entry 60). Plaintiff provided largely nonresponsive answers to Defendants' interrogatories and document production requests (see id. at 4-12) and, rather than admitting or denying Defendants' requests for admission, Plaintiff opted to "[p]lead the 5th" for each request (id. at 13-14). The requests for admission included (i) "Admit for the date of June 24, 2019, [Plaintiff] w[as] scheduled to work at [Lynnwood] from 6 p.m. to close[;]" (ii) "Admit that the date of June 24, 2019, [Plaintiff] did not work from 6 p.m. to close at [Lynnwood;]" (iii) "Admit that [Plaintiff's] employment was terminated for legitimate non-

---

4 Section 1981a provides "[d]amages in cases of intentional discrimination in employment" under Title VII, 42 U.S.C. § 1981a (bold font omitted), and "42 U.S.C. § 1981b does not exist," Cummings v. Mitchell, No. CV 118-161, 2020 WL 6802032, at *1 n.1 (S.D. Ga. Nov. 19, 2020), aff'd, No. 20-14784, 2022 WL 301697 (11th Cir. Feb. 2, 2022). By contrast, Section 1981 "has long been construed as barring racial discrimination in public and private contracts." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 225 n.6 (4th Cir. 2016). Although "Plaintiff oppose[d] the recommendation of dismissing [his] 14th amendment claim, Title VII [claim,] and ADEA claim" (Docket Entry 34 at 2), he did not object to the Recommendation's treatment of his Section 1981 claims (see id. at 1-4).

4

discriminatory reasons[;]" (iv) "Admit that Defendants did not discriminate against [Plaintiff] because of [his] race[;]" (v) "Admit that Defendants did not harass [Plaintiff] because of [his] race[;]" and (vi) "Admit that [Plaintiff] w[as] not meeting [his] employer's reasonable expectations at the time [his] employment was terminated." (Id.)

Thereafter, Defendants moved for summary judgment based upon, inter alia, "Plaintiff's discovery responses, the Declaration of Edwin Dwyer attached []to [the Motion] as Exhibit A [(the 'Affidavit')], and the authorities and arguments set forth in the accompanying Memorandum in Support of Defendants' Motion." (Docket Entry 62 at 1.)  Edwin (Ted) Dwyer, the president of Lynnwood (Docket Entry 62-1, ¶ 2), "a North Raleigh restaurant where [Plaintiff] was employed as a dishwasher" (id., ¶ 4), provided the Affidavit.  In the Affidavit, Dwyer avers:

> During [Plaintiff's] employment and at all times relevant hereto Lynnwood Grill maintained an[d] enforced the following anti-discrimination policy:
>
> *Lynnwood Grill provides equal employment opportunities (EEO) to all employees and applicants for employment without regard to race, color, religion, gender, sexual orientation, national origin, age, disability, marital status, amnesty, or status as a covered veteran in accordance with applicable federal, state and local laws.  This policy applies to all terms and conditions of employment, including, but not limited to, hiring, placement, promotion, termination, layoff, recall, and transfer, leaves of absence, compensation, and training.*

5

During [Plaintiff's] employment and at all times relevant hereto Lynnwood Grill maintained and enforced the following anti-harassment policy:

*It is the policy of Lynnwood Grill to maintain a work environment in which all individuals are treated with respect and dignity. Each individual has the right to work in a professional atmosphere which prohibits discriminatory practices, including sexual harassment and harassment based on race, color, religion, sex, marital status, citizenship, national origin, sexual orientation, age, handicap, or disability. Harassment, whether verbal, written, or physical, is unacceptable and will not be tolerated by the restaurant. Please report any instances of harassment, whether received or witnessed, as soon as possible*

During [Plaintiff's] employment and at all times relevant hereto Lynnwood Grill maintained and enforced the following non-retaliation policy:

*Lynnwood Grill encourages individuals to bring forward information and/or complaints about violations of state or federal law, Lynnwood Grill policy, rules or regulations. Retaliation against any individual who, in good faith, reports or who participates in the investigation of alleged violations is strictly forbidden. This policy does not protect an individual who files a report or provides information as part of an investigation that he or she knows is false, files a bad faith retaliation claim or participates in any illegal conduct. Lynnwood Grill will take appropriate action, up to and including dismissal, against any employee who violates this policy.*

In [his] role as President of Lynnwood Grill [Dwyer] ha[s] personal knowledge of facts and circumstances relevant to the employment of [Plaintiff].

During [Plaintiff's] employment we received complaints from his co-workers about his behavior, including several incidents of him purposely bumping into other employees. [Plaintiff] was counseled about this behavior.

6

On June 24, 2019, [Plaintiff's] employment was terminated because he left work before his agreed upon shift ended.

Lynnwood Grill's Employee Manual in effect during [Plaintiff's] employment specifically states that an employee involved in, *inter alia*, the following conduct is subject to immediate termination:

a. "Leaving your job before the scheduled time without the permission of [the] Manager-on-duty."

b. "Refusal to follow the reasonable instructions of management."

c. "Engaging in harassment of any kind toward another employee or customer."

d. "Actions or threats of violence or abusive language directed toward a customer or another staff member."

The decision to terminate [Plaintiff's] employment was made by the same decision maker that initially hired him.

The reason for [Plaintiff's] termination was contemporaneously memorialized by Rik Richards (Director of Operations) as follows:

*In the first month of [Plaintiff's] employment (hired 5-20) we have had numerous discussions with him about his attitude and the way he communicated with staff. He works hard but gets very animated and aggressive when he is given constructive criticism.*

*I took [Plaintiff] outside Saturday night (6-22) to discuss a heated discussion he was having with multiple employees that night (a server and another dishwasher) about how we can have productive dialogue. I told him that night it was a verbal warning, he stated he understood.*

*On 6-23 the schedule [Plaintiff] was given was changed due to NC/NS from another employee. [Plaintiff] was asked if he could work 6-24 6pm-close and he stated he would. Bryan Hubacheck*

7

*(another employee) was also present. After this verbal "yes" Will Austin changed the schedule for [Plaintiff] in ScheduleFly at 6:32pm the 23rd, for the 24th.*

*On 6-24 [Plaintiff] and Will Austin came into the office with me[] (5:35pm) and discussed the previous night's arrangement because [Plaintiff] stated he would not close. He was "tired" and that wasn't his original schedule. After much dialogue, [Plaintiff] then decided to say it was "No Problem, and he would cover the shift."*

*At 9:00pm he pulled us into the office again and stated he wasn't staying to close, and he was out. [Plaintiff] recorded my entire conversation at 9pm the 24th of June with him, and I told him if he wouldn't have said "no problem" to covering the shift earlier in the night we would have found someone to cover his shift. On short notice we could not cover it because it was so late at night, hence we terminated his employment after all these issues.*

[Plaintiff] was never asked to do anything that any other employee in his position would not have been expected to do while working for Lynnwood Grill.

[Plaintiff] was not treated differently than any other employee would be with respect to disciplinary actions, scheduling, or termination under the circumstances.

Lynnwood Grill and its employees did not make any statements or take any action with respect to [Plaintiff] that were motivated by his race.

Lynnwood Grill denies any racially motivated harassment occurred with respect to [Plaintiff] and exercised reasonable care at all relevant times to prevent any such racially motivated harassment.

[Plaintiff] unreasonably failed to take advantage of Lynnwood Grill's procedures in place to prevent or correct alleged racially motivated harassment by, *inter alia*, failing to notify Lynnwood Grill or any of its

8

managers of any alleged racial harassment or discrimination prior to his termination.

[Plaintiff] was not meeting Lynnwood Grill's reasonable expectations at the time of his termination because, *inter alia*, he walked off the job before his shift was over leaving the restaurant short staffed.

(Id., ¶¶ 6-20 (italics in original) (internal paragraph numbering omitted).)

The Clerk sent Plaintiff a Roseboro notice regarding Defendants' Motion, warning him that his "failure to respond or . . . file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the defendants' contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter." (Docket Entry 65 at 1.) The notice further cautioned that, "unless [Plaintiff] file[d] a response in opposition to the [M]otion, it is likely [his] case will be dismissed, or judgment granted in favor of the defendants." (Id.) Finally, the notice "reminded [Plaintiff] that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify." (Id.)

Thereafter, Plaintiff filed his "Response to Defendants' Summary Judgment [Motion]." (Docket Entry 67 (the "Response") at 1.) The two-page Response first outlines the "Summary Judgment Standard" (id.). (See id. at 1-2.) It then states, in full:

9

<u>Facts</u>

Caucasian managers at Lynnwood Brewing and Concern [are] biased against African-American employees such as [Plaintiff]. [He] was required to do extra work outside [his] job description — which Caucasian workers are not entitled [sic] to do. [Plaintiff's] work schedule[] was changed on short notice contrary to the schedule[] previously posted. When [Plaintiff] complained of differential treatment, the Caucasian Manager belittled [him] and treated [him] like [he] was incapable of understanding them [sic], ultimately firing [him]. They discriminated against an African-American male who stands up for himself. The only African-Americans who were treated better than [Plaintiff] were the ones who acted gay.

<u>Conclusion</u>

Motion for Summary Judgment should be denied.

[Plaintiff's signature and date]

(<u>Id.</u> at 2 (underlining in original).)

## **DISCUSSION**

### **I. Relevant Standards**

### **A. Summary Judgment Standard**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

10

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).  If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that

"[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Further, factual allegations in a complaint or other court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

## B. Requests for Admission and the Fifth Amendment

Under Rule 36 of the Federal Rules of Civil Procedure (the "Rules"), "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [discovery] relating to[, inter alia, the] facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must

12

specify the part admitted and qualify or deny the rest." Id. "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

However, under the Fifth Amendment, "no person . . . shall be compelled in any criminal case to be a witness against himself." Kastigar v. United States, 406 U.S. 441, 448 (1972) (internal quotation marks and brackets omitted) (ellipsis in original). "[T]he Fifth Amendment privilege against compulsory self-incrimination," id. at 444, "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used," id. at 444-45 (footnote omitted). Notably, though, "[a]n admission under [Rule 36] is not an admission for any other purpose and cannot be used against the party in any other proceeding." Fed. R. Civ. P. 36(b). Thus, because "requests for admissions responses cannot be used against defendants in criminal proceedings," at least one federal appellate court has concluded that "the Fifth Amendment is not a defense to [such] requests." Ledet v. Perry Homes, No. 21-50618, 2022 WL 831809, at *1 n.1 (5th Cir. Mar. 21, 2022).

In any event, "the mere blanket refusal to answer questions does not suffice to raise constitutional questions." North River

13

Ins. Co. v. Stefanou, 831 F.2d 484, 486 (4th Cir. 1987) (internal quotation marks omitted).  Rather, "for one to invoke th[e fifth-amendment] privilege[,] the party claiming it must not only affirmatively assert it, he must do so with sufficient particularity to allow an informed ruling on the claim."  Id. at 487.  As such, the party must respond "in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted as to each question."  Id.  In other words, "[t]he [party] must provide a foundation for the assertion of the privilege so that the district court may determine whether the privilege may be invoked."  Industrial Indem. Co. v. Niebling, 844 F. Supp. 1374, 1377 (D. Ariz. 1994).  For instance, courts have held that the party must

> supply such additional statements under oath and other
> evidence to the District Court in response to each
> question propounded so as to enable the District Court to
> reasonably identify the nature of the criminal charge for
> which [the party] fears prosecution, . . . and to discern
> a sound basis for the [party's] reasonable fear of
> prosecution.

Id. (internal quotation marks omitted) (ellipsis in original).

Further, the United States Supreme Court has made clear that "[a] witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination."  Hoffman v. United States, 341 U.S. 479, 486 (1951).  Instead, "[t]he central standard for the privilege's application has been whether

14

the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." <u>Marchetti v. United States</u>, 390 U.S. 39, 53 (1968). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." <u>Hoffman</u>, 341 U.S. at 486-87. Regardless, "when a [party] asserts a Fifth Amendment privilege against self-incrimination in a civil case, that assertion may ultimately result in a conclusion at trial or on a motion for summary judgment that the [opposing party's] evidence is unrebutted and that [the asserting party] is unable to establish any genuine issue of material fact." <u>Arminius Schleifmittel GmbH v. Design Indus., Inc.</u>, No. 1:06cv644, 2008 WL 819032, at *2 n.1 (M.D.N.C. Mar. 20, 2008).

### C. McDonnell Douglas Framework

"[I]n employment discrimination and retaliation cases where a plaintiff does not present sufficient direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's protected characteristic(s)," courts "apply[] the <u>McDonnell Douglas</u> burden-shifting framework." <u>Guessous v. Fairview Prop. Invs., LLC</u>, 828 F.3d 208, 216 (4th Cir. 2016). More specifically:

The <u>McDonnell Douglas</u> framework is comprised of three steps:  (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

<u>Id.</u>

"For status-based discrimination claims, the employee must show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."  <u>Id.</u> (internal quotation marks omitted).  "Retaliation claims, by contrast, require the employee to show that retaliation was a but-for cause of a challenged adverse employment action," recognizing "that a cause need not work in isolation to be a but-for cause."  <u>Id.</u> at 217 (internal quotation marks omitted).  Further, "the plaintiff's burden to show pretext merges with the plaintiff's ultimate burden of persuading the court that []he was a victim of intentional discrimination."  <u>Id.</u> (internal quotation marks omitted).

## II. Analysis

### A. Preliminary Matters

As noted, Plaintiff provided a blanket assertion of his fifth-amendment privilege in response to Defendants' requests for admission. (<u>See</u> Docket Entry 60 at 13-14 (answering "Plead the 5th" to all twelve requests).)  Plaintiff provided no information

16

regarding the foundation for his fifth-amendment assertion, and the requests themselves — which solicit admissions regarding, inter alia, Plaintiff's failure to complete a scheduled shift, Defendants' failure to harass or discriminate against Plaintiff, and Plaintiff's failure to meet his employer's reasonable expectations — raise no obvious criminal concerns. (See id.) "Under the circumstances of this case, a blanket refusal to answer or respond was not sufficient." North River Ins., 831 F.2d at 487. Plaintiff therefore failed to properly invoke any fifth-amendment privilege. See id. Because Plaintiff failed to properly respond to Defendants' requests for admission, those "matter[s are] admitted" under Rule 36. Fed. R. Civ. P. 36(a)(3).

## B. Section 1981 Discrimination Claim

Plaintiff reports that, during his employment at Lynnwood, "[he] was subjected to disparate terms and conditions of employment in that White kitchen managers required [him] to complete duties that were not assigned to White dishwashers." (Docket Entry 2 at 8.) "Specifically, [Plaintiff] was required to complete tasks that the 10pm ending shift failed to complete. [He] was also required to transport dishes to the rack and cook line." (Id.) In addition, after a verbal altercation with a White kitchen manager, another White employee fired Plaintiff in June 2019. (Id.)

As detailed in the Background section, "[P]laintiff d[id] not present sufficient direct or circumstantial evidence showing that

17

an adverse employment action was motivated by intentional discrimination aimed at [his race]," <u>Guessous</u>, 828 F.3d at 216. Accordingly, the Court must look to the <u>McDonnell Douglas</u> burden-shifting alternative proof scheme, whereby:

> [i]n a typical discriminatory discharge case, the plaintiff establishes a prima facie case by showing (1) that []he is a member of a protected class; (2) that []he suffered from an adverse employment action; (3) that . . . []he was performing at a level that met [his] employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

<u>Id.</u> at 219 (internal quotation marks omitted) (ellipsis in original). Here, the record establishes that Plaintiff "w[as] not meeting [his] employer's reasonable expectations at the time [his] employment was terminated." (Docket Entry 60 at 14; <u>accord</u> Docket Entry 62-1, ¶ 20 ("[Plaintiff] was not meeting Lynnwood Grill's reasonable expectations at the time of his termination because, *inter alia*, he walked off the job before his shift was over leaving the restaurant short staffed." (italics in original)).) Plaintiff therefore failed to establish a prima facie case of discrimination.[5] The Court should thus grant Defendants' request

---

5 Alternatively, even if Plaintiff satisfied his burden at step one of the burden-shifting framework, Defendants have articulated a non-discriminatory reason for Plaintiff's discharge from employment (i.e., his failure to complete his shift) and Plaintiff has not come forward with competent evidence that the articulated rationale constituted pretext for intentional racial discrimination.

for summary judgment on Plaintiff's Section 1981 discrimination claim.

## C. Section 1981 Retaliation Claim

Plaintiff also pursues a claim for retaliation. (See Docket Entry 2 at 4.) "To establish a prima facie case of retaliation under [Section 1981, Plaintiff] must show (i) that [he] engaged in protected activity, (ii) that [his employer] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." Guessous, 828 F.3d at 217 (internal quotation marks omitted). "A plaintiff who establishes a prima facie case of retaliation bears the ultimate burden of persuading the court that [he] has been the victim of intentional [retaliation]." Foster v. University of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015) (internal quotation marks omitted) (second set of brackets in original). "In order to carry this burden, a plaintiff must establish both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." Id. (internal quotation marks omitted) (brackets in original).

Plaintiff provides no evidence suggesting that he engaged in any protected activity (see Docket Entry 2 at 8),[6] but he alleges

_____

6  Notably, although Plaintiff avers in the EEOC Form that his firing occurred "after a verbal disagreement" with a White manager, he provides no details regarding the substance of that disagreement and he did not identify "retaliation" as one of the grounds upon which he experienced discrimination. (Id. (identifying only "race"

19

in the Complaint that, "[w]hen [he] complained about differential treatment [between White workers and himself], the Caucasian managers belittled [him] and treated [him] like [he] was incapable of understanding them, ultimately firing [him]" (id. at 4). Complaining about discriminatory treatment can constitute protected activity. See Foster, 787 F.3d at 253. Even assuming Plaintiff could establish a prima facie case of retaliation from the allegations in his Complaint and necessarily short duration between his purported complaint(s) and firing (see Docket Entry 62-1, ¶ 14 (reflecting employment of roughly one month)), his retaliation claim still fails as a matter of law. The record establishes a legitimate, non-discriminatory reason for Plaintiff's firing, namely that "he walked off the job before his shift was over leaving the restaurant short staffed" (id., ¶ 20; accord Docket Entry 60 at 13), conduct that Lynnwood's Employee Manual makes clear "is subject to immediate termination" (Docket Entry 62-1, ¶ 12). Plaintiff has provided (see Docket Entries 2, 67), and the record discloses, no grounds for questioning the authenticity of this rationale. See generally Foster, 787 F.3d at 254 ("From this evidence, the district court concluded that [the plaintiff] 'render[ed] the employer's reason so questionable as to raise an inference of deceit.' We agree. A reasonable jury could conclude from [the plaintiff's] evidence that the [employer's] proffered

_____

and "age," not "retaliation," as sources of discrimination).)

justifications were not its real reasons for firing her. A reasonable jury could further conclude . . . that the [employer's] actual reason for firing [the plaintiff] was to retaliate against her for complaining about [an employee's] alleged sexual harassment and for [the plaintiff's] subsequent complaints of ongoing retaliation." (citation omitted) (second set of brackets in original)). The Court should therefore grant Defendants summary judgment on Plaintiff's Section 1981 retaliation claim.

### D. Section 1981 Hostile Work Environment Claim

Defendants also move for summary judgment on any hostile work environment claim that Plaintiff pursues under Section 1981. (See Docket Entry 63 at 12-14.) Under controlling authority:

> [t]o prevail on a hostile work environment claim, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.

Guessous, 828 F.3d at 221 (internal quotation marks omitted) (brackets in original). "To establish that harassment was based on race, Plaintiff must show that 'but for' [his] race . . ., [he] would not have been the victim of the alleged discrimination." Parks v. Louisiana-Pac. Corp., 400 F. Supp. 3d 393, 406 (W.D.N.C. 2019) (certain internal quotation marks omitted) (brackets and ellipsis in original).

21

As relevant here, to satisfy the third element of his hostile work environment claim, Plaintiff must establish "both a subjective and objective component, i.e., the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment." Id. at 407. "In assessing whether harassment is objectively abusive, courts must examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks omitted). Importantly, "a plaintiff pressing a hostile work environment claim must substantiate his claim with reasonable specifics about the alleged incidents that underlie the claim." Id. at 408 (internal quotation marks omitted). Moreover, "[t]he existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial." Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994).

Plaintiff provides no details that would support a hostile work environment claim. (See Docket Entry 2 at 8 (lacking information regarding, for instance, frequency of alleged incidents).) In addition, Plaintiff has "[a]dmit[ted] that Defendants did not harass [him] because of [his] race" (Docket Entry 60 at 13), and Dwyer has averred that "Lynnwood Grill and its employees did not make any statements or take any action with

22

respect to [Plaintiff] that were motivated by his race" (Docket Entry 62-1, ¶ 17). Further, "Lynnwood Grill denies any racially motivated harassment occurred with respect to [Plaintiff] and [maintains that it] exercised reasonable care at all relevant times to prevent any such racially motivated harassment." (Id., ¶ 18.) Accordingly, even assuming Plaintiff pursues such a claim, he failed "to establish an actionable claim of harassment," Carter, 33 F.3d at 461-62. The Court should therefore grant Defendants' request for summary judgment on any hostile work environment claim. See id. (affirming dismissal of "claims of harassment or racially hostile work environment" where testimony regarding alleged harassment "[wa]s not substantiated by accounts of specific dates, times or circumstances," explaining that "[s]uch general allegations do not suffice to establish an actionable claim of harassment").

## CONCLUSION

Plaintiff's Section 1981 claims against Defendants fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 62) be granted.

This 29th day of August, 2022.

/s/ L. Patrick Auld

**L. Patrick Auld**

**United States Magistrate Judge**

23